IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 17, 2013

# STATE OF TENNESSEE v. QUANYA REVELL PREWITT

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-48     Cheryl Blackburn, Judge**

_____

**No. M2012-01627-CCA-R3-CD - Filed June 26, 2013**

_____

The defendant, Quanya Revell Prewitt, appeals her Davidson County Criminal Court jury conviction of possession with intent to sell or deliver dihydrocodeinone, a Schedule III substance, in a school zone, claiming that the trial court erred by limiting the scope of cross-examination of two of the State's witnesses and that the evidence was insufficient to support her convictions. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Sean McKinney and Carrie Searcy, Nashville, Tennessee, for the appellant, Quanya Revell Prewitt.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On July 12, 2011, Metropolitan Nashville Police Department ("Metro") Officer Charles Large was on patrol when an employee of the Z-Mart gas station approached him in the parking lot of the station and made a complaint. Based upon the information he received, Officer Large asked the defendant and another individual, Tory Crawley, to come to his car. Mr. Crawley showed Officer Large "a bunch of pills," and Officer Large confiscated the 12 pills.

During this time, the defendant, who had not complied with the officer's request to come to the car, walked to "the side of the building next to a dumpster and a light pole." After standing there for 20 or 30 seconds, she then walked to where Officer Large stood with Mr. Crawley. After the defendant denied any knowledge of the pills confiscated from Mr. Crawley, Officer Large walked to the area where the defendant had gone after exiting the store and "found a prescription pill bottle sitting on a light post base with her name on them." The bottle was labeled with the defendant's name and the prescription name "hydrocholorothiazide," and it contained 17 hydrocodone pills identical to those taken from Mr. Crawley.

Officer Large placed both individuals under arrest, and as they drove to the police station, the defendant "said that she just wanted to trade the pills for beer because she had been drinking and wanted more to drink."

Officer Large utilized a map prepared by Metropolitan Planning Department cadastral analyst Thomas Corcoran and which highlighted a 1,000 foot "buffer" around Cameron Middle School to demonstrate that the Z-Mart parking lot was located inside the buffer.

Mohammed Ayesh was working at the Z-Mart on July 12, 2011, when the defendant came to the counter, placed some pills on the counter, and asked if she could trade the pills for beer. The cashier asked the defendant to leave, and then either Mr. Ayesh or the cashier reported the incident to Officer Large.

Chemical testing by the Tennessee Bureau of Investigation ("TBI") established that the pills confiscated from the defendant and Mr. Crawley were hydrocodone, the same chemical compound also known as dihydrocodeinone and sold under the brand name Vicodin. Hydrocholorothiazide, the medication for which the bottle was labeled, does not contain dihydrocodeinone but is instead a diuretic.

The defendant testified that she was prescribed hydrocodone on July 1, 2011, for pain associated with an injury. She said that she went to the Z-Mart on July 12, 2011, to purchase cigarettes and that when she got inside, she saw Mr. Crawley "in it seemed like an altercation with the clerk," so she left the store. She claimed that she did not see Officer Large and did not hear him call to her the first time. She said that she stopped when the Officer called a second time and that she placed the pill bottle next to the light post because she was aware that she had hydrocodone in the wrong prescription bottle. She claimed that the hydrocodone pills got into the hydrochlorothiazide bottle when all her pills spilled into her purse.

-2-

The defendant denied drinking on the night of the offense and maintained that she did not attempt to trade her pills for beer. She claimed that she was simply walking to a friend's house and not trying to evade Officer Large.

During cross-examination, the defendant said that when her friend telephoned and asked the defendant to come to her house, she "picked up a pill bottle and put it in [her] purse" and headed to the friend's house despite the late hour. She insisted that she grabbed the pills because she thought they were either for her hypertension or hyperthryoid and that she intended to take them the following morning. She said that, inexplicably, two bottles of medication had emptied into her purse at the same time and became mixed together. Despite having said during direct-examination that she combined the pills into a single bottle, she claimed that she randomly returned the pills to two bottles. She could not explain how the bottle for hydrochlorothiazide came to contain only hydrocodone pills.

The defendant said that she used her cellular telephone to call her friend from the parking lot of the Z-Mart just after she exited the store ahead of Mr. Crawley. She denied that she and Mr. Crawley exited the store together and insisted that Officer Large was lying when he said that they did. Despite having claimed on direct examination that she put the pill bottle on the ground because she knew that the pills were in the wrong bottle, she denied knowing that hydrocodone pills were in the bottle. The defendant also confusingly claimed that she "didn't have nothing but one bottle" and that her other pills must have been "in the other bottle." She claimed that the officer lied when he testified that she told him that she had tried to trade the pills for beer.

Based upon this proof, the jury convicted the defendant as charged, and, following a sentencing hearing, the trial court imposed a sentence of four years' incarceration. Following the denial of her timely motion for new trial, the defendant filed a timely appeal, challenging her conviction on grounds that the trial court erred by limiting cross-examination of Officer Large and that the evidence was insufficient to support her conviction. We consider each claim in turn.

*I. Cross-Examination of Officer Large*

The defendant contends that the trial court erred by prohibiting her from questioning Officer Large about Mr. Crawley's previous legal troubles and the offense with which the defendant and Mr. Crawley were originally charged. The State asserts that the trial court committed no error. We agree with the State.

In Tennessee, "the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for

abuse of discretion." *State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993); *see State v. Hutchison*, 898 S.W.2d 161, 172 (Tenn. 1994); *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995); *State v. Barnard*, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994); *see also* Tenn. R. Evid. 611(a) (stating that the trial court has authority to "exercise appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid abuse by counsel"). Consequently, absent a clear abuse of discretion that results in manifest prejudice to the accused, this court will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses. *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984).

Here, the defendant asked Officer Large whether he was familiar with Mr. Crawley before encountering him on July 12, 2011, and Officer Large responded that he was. The defendant then asked Officer Large the nature of his prior interactions with Mr. Crawley and whether he had previously arrested Mr. Crawley. The State objected on grounds that the information was irrelevant, and the trial court sustained the objection. Defense counsel professed a desire to establish that Mr. Crawley had previously been removed from the Z-Mart, had previously been arrested by Officer Large, and was generally "a problem person." The court again deemed the information irrelevant, noting that Mr. Crawley was not a witness in the case whose credibility was at issue for the jury. The trial court permitted the defendant to illicit information that Mr. Crawley was arrested that same evening but ruled that she could not ask about the nature of the charge.

In our view, the trial court did not abuse its discretion by refusing to permit this line of questioning because the information was irrelevant. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The trial court correctly determined that, because he was not a witness in the case, Mr. Crawley's credibility was not at issue. That Mr. Crawley was "a problem person" did not make any fact of consequence more or less probable. The defendant is not entitled to relief on this issue.

## II. Sufficiency

The defendant avers that the evidence was insufficient to support her conviction because there was no proof that Officer Large actually saw her in possession of the controlled substance. The State contends that the proof was sufficient.

We review the defendant's challenge to the sufficiency of the evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

-4-

of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

In this case, the defendant admitted that she possessed the pill bottle that Officer Large discovered at the lamp post and that she had placed the bottle there because she knew that the pills were in an incorrect bottle. Moreover, Officer Large testified that he watched the defendant walk to the lamp post, stay there for 20 to 30 seconds, and then walk to him. He then walked to the lamp post and discovered the bottle. Testing established that the pills contained dihydrocodeinone, a Schedule III controlled substance. Although some proof established that the defendant had been prescribed the medication, overwhelming proof showed that she tried to deliver the drugs to the cashier at the Z-Mart in exchange for beer. The defendant admitted as much to Officer Large. The evidence also established that the offense occurred within 1,000 feet of an elementary school. Under these circumstances, the evidence was sufficient to support the defendant's conviction.

### *Conclusion*

Because the trial court did not err by limiting the scope of cross-examination and because the evidence supports the defendant's conviction, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE